**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

eAdGear, Inc., dba www.eadgear.com,

        Plaintiff,

        v.

Lewis Liu, aka Wei Liu; ET AL.,

        Defendants.

_____/

Case No.  CV-11-05398 JCS

**REPORT AND RECOMMENDATION RE APPLICATION FOR DEFAULT JUDGMENT BY COURT**
**[Docket No. 14]**

## I.    INTRODUCTION

Plaintiff eAdGear, Inc. ("Eadgear") brought an action for trademark infringement, Defendants failed to answer or otherwise appear, and the Clerk entered default on January 26, 2012. Plaintiff filed an Application for Default Judgment by Court ("Motion" or "Default Judgment Motion") on March 2, 2012.  In its motion, Plaintiff seeks an entry of default judgement by this Court, an award of compensatory damages, statutory damages, attorneys' fees, costs of the suit and a permanent injunction against Defendants Lewis Liu ("Liu"); www.eadgear.ca ("eadgear.ca"); www.zeekrewards.com ("zeekrewards.com"); Xinzheng Wire Mesh Co., Ltd. ("Xinzheng Co."); and Xinzheng Companies (America), Inc. ("Xinzheng (America) Inc.").  A hearing on the Motion was scheduled on June 15, 2012.  For the reasons stated below, it is recommended that the Motion be GRANTED in part and DENIED in part.

## II.    BACKGROUND

### A.    Complaint

Eadgear is a California corporation with its principal place of business located at 4305 Hacienda Drive, Pleasanton, California 94588.  Complaint (Compl.) ¶¶ 2, 11; *see also* Declaration of Charles Wang in Support of Plaintiff's Application for Default Judgment by Court ("Wang Decl.") ¶ 2.  Eadgear is engaged in the online advertising business, doing business under the name

eadgear.com with customers in both the United States and Asia. Compl. ¶ 13; Wang Decl. ¶¶ 2, 11. Eadgear.com registered its domain name on November 16, 2000, and has been using it ever since as a doing business name. Compl. ¶ 12; *see also* Declaration of Danning Jiang in Support of Plaintiff's Application for Default Judgment by Court ("Jiang Decl.") Ex. 2 (Whois results for www.eadger.com domain name registration). Plaintiff's business is rated an "A-" accredited business by the Better Business Bureau Business Review ("BBB") on a scale from "A+" to "F." Compl. ¶ 11 & Ex. 1 (BBB Business Review).

Plaintiff filed the Complaint in this action on November 7, 2011, naming the following five defendants: (1) Lewis Liu, aka Wei Liu; (2) eadgear.ca; (3) zeekrewards.com; (4) Xinzheng Wire Mesh Co., Ltd. ("Xinzheng Co."); and (5) Xinzheng Companies (America), Inc. ("Xinzheng (America)  Inc.").

In the Complaint, Plaintiff alleges that Defendant Liu is an individual with his place of business at 136-31 41st Avenue, Suite 3C8, Flushing, NY 11355. Compl. ¶ 3. Liu allegedly has registered the domain name: eadgear.ca, which is engaged in advertising services and promotes the business of a separate domain: zeekrewards.com. Compl. ¶ 4.

Plaintiff alleges that Xinzheng Co. is a company organized under the laws of China or Canada, but with its principal place of business located at 136-31 41st Avenue, Suite 3C8, Flushing, NY 11355. Compl. ¶ 6. Plaintiff further alleges that Xinzheng Co. sponsors edadgear.ca and zeekrewards.com in their unfair competition with Plaintiff. Compl. ¶ 6.

In the complaint, Plaintiff alleges that Defendant Xinzheng (America) Inc. is a company organized under the laws of the state of New York, and that its principal place of business is located at 136-31 41st Avenue, Suite 3C8, Flushing, NY 11355.

In the complaint, Plaintiff alleges that Defendants' website zeekrewards.com is a website registered by Defendants Liu, Xinzheng Co., and/or Xinzheng (America) Inc., either jointly or individually. Compl ¶ 5. Plaintiff alleges that conspiring with Xinzheng Co., Xinzheng (America) Inc. sponsors eadgear.ca and zeekrewards.com in their unfair competition with Plaintiff. Compl. ¶ 7.

Plaintiff alleges it has devoted significant resources in branding and promoting the domain name eadgear.com and the Chinese-equivalent marks in both the United States and in Asia. Compl.

United States District Court

For the Northern District of California

¶ 13.  Plaintiff further alleges it has advertised its mark through websites, newspapers, brochures, events, conferences, trade shows, etc.  Compl. ¶ 13.  Plaintiff alleges that it has spent more than $1 million in branding and promoting the eadgear.com domain name.  Wang Decl. ¶ 10.  Plaintiff alleges it has trained and developed a network consisting of thousands of members and sales people. Compl. ¶ 13.

Plaintiff alleges that on or about March 9, 2011, Liu registered as Plaintiff's member and salesperson and since then has maintained an Eadgear ID number of 127264.  Compl. ¶ 14.  Without Plaintiff's prior knowledge and consent, Liu registered the domain name www.eadgear.ca on April 11, 2011.  Ex. 2 (Whois domain name registration of www.eadgear.ca).  Plaintiff alleges that Liu did so with the intent to compete with Plaintiff and to take over Plaintiff's market.  Compl. ¶ 14. Plaintiff further alleges that beginning in early October 2011, Liu published defamatory statements on eadgear.ca, stating that Plaintiff's business was not accredited by the BBB Business Review; implying that the BBB would soon publish a report stating eadgear.com had abusively used BBB's evaluation.  Compl. ¶ 15; *see also* Wang Decl. ¶12, Ex. 4 (screenshot from www.eadgear.ca dated 10/10/11).  Plaintiff further alleges that Liu stated on eadgear.ca that Plaintiff's holding company in Hong Kong never existed.  Compl. ¶ 15; Wang Decl. ¶ 12, Ex. 4.  Plaintiff alleges that all of the above statements made by Liu are false.  Compl. ¶ 15.  Plaintiff also alleges that Liu used eadgear.ca to promote his own advertising business zeekrewards.com, asking customers under his Plaintiff account (Eadgear ID #127267) to transfer business to zeekrewards.com, and promising a low monthly service fee and other incentives to customers willing to do so.  Compl. ¶ 15.

Plaintiff also alleges that by providing links to Plaintiff's website, Defendants have somehow violated Plaintiff's copyright protections. The allegedly copied web pages include: (1) "Service Tools," (2) "WhyeAdGear," (3) "Opportunity," (4) "Help Documents," (5) "FAQs," (6) "SubscriberLogin," and (7) "AboutUs" (Collectively, "copyrighted web pages") Compl. ¶ 16, Ex. 4; *see also* Wang Decl. Ex. 5-11.  Plaintiff alleges that the Defendants did not obtain Plaintiff's prior consent before "copying" these web pages.  Compl. ¶ 16.

**United States District Court**
For the Northern District of California

1    Plaintiff asserts the following eight claims:

2        (1) false designation of origin – Lanham Act § 43(a), 15 U.S.C. § 1125(a)
         against defendants Liu and eadgear.ca;
3

4        (2) trademark dilution – Cal. Bus. Prof. Code §§ 14330, *et. seq.* against
         defendants Liu and eadgear.ca;

5        (3) cancellation of domain name registration – Lanham Act § 43(d), 15 U.S.C.
         § 1125(d) against defendants Liu and eadgear.ca;
6

7        (4) copyright infringement – 17 U.S.C. §§ 501 *et. seq.* against defendants Liu
         and eadgear.ca;

8        (5) cyberpiracy – Lanham Act § 43(d), 15 U.S.C. § 1125(d) against all named
         defendants;
9

10       (6) unlawful competition – Cal. Bus. Prof. Code §§ 17200, *et. seq.* and
         common law against all named defendants;

11       (7) defamation – Cal. Civ. Code § 45 against defendants Liu and eadgear.ca;

12       (8) accounting, under common law, against all named defendants.

13   Compl. ¶¶ 19-53.

14       In support of Claim One (false designation of origin), Plaintiff alleges that eadgear.com was

15   distinctive at the time when defendant Liu registered the domain name eadgear.ca, and Liu was still

16   a member and salesperson of Plaintiff's. Compl. ¶ 20. Plaintiff further alleges that Liu knew or

17   should have known the fact that Plaintiff Eadgear is a California corporation that owned

18   eadgear.com. *Id.* Plaintiff alleges that Liu used the eadgear.ca domain name and solicited Plaintiff's

19   customers under Plaintiff Member ID # 127264. Compl. ¶ 21. Plaintiff further alleges that the two

20   domain names are similar enough to cause confusion as to the source of Defendants' services. *Id.*

21   Plaintiff alleges that both Liu and eadgear.ca were and are still engaged in trademark infringement in

22   violation of the Lanham Act, because eadgear.ca was made with the intent to deceive and to falsely

23   represent to consumers that Plaintiff's company was the source of eadgear.ca's services. Compl. ¶¶

24   21-22. Plaintiff further alleges that these infringements were intentional, willful, and in bad faith.

25   *Id.* Plaintiff alleges it will suffer irreparable injury unless this Court restrains Defendants from

26   committing additional infringing acts. Compl. ¶ 24.

27       In support of Claim Two (trademark dilution), Plaintiff alleges that through extensive use, its

28   mark has become distinctive to customers, as customers often refer to Plaintiff's services by its

**United States District Court**
For the Northern District of California

1    brand-name eadgear.com.  Compl ¶ 27.  Plaintiff alleges that Defendants copied Plaintiff's mark and

2    by doing so its use is likely to cause confusion amongst the public. *Id.*  Plaintiff alleges that such

3    copying of Plaintiff's proprietary and distinctive mark constitutes trademark dilution under

4    California Business & Professions Code §14330.  Compl. ¶ 25-29.

5         In support of Claim Three (cancellation of domain name registration), Plaintiff alleges that

6    Liu's registration of eadgear.ca was executed fraudulently, because on April 8, 2011, the date of

7    Liu's registration, Plaintiff's domain had already been in use for five months and Liu was a member

8    and salesperson on behalf of the Plaintiff.  Compl. ¶ 31. Plaintiff further alleges that because the

9    domain name was fraudulently obtained, the registration is null and void, and so should be canceled

10   or transferred to Plaintiff's ownership pursuant to 15 U.S.C. §1125(d)(1)(c).  Compl. ¶ 33.

11        In support of Claim Four (copyright infringement), Plaintiff alleges it is the rightful owner of

12   the seven copyrighted web pages mentioned previously and their content. Each of Plaintiff's web

13   pages contain the warning language "Copyright eAdgear.com 2011 – All Rights Reserved." Compl.

14   ¶ 36.  Plaintiff alleges that Liu and eadgear.ca copied Plaintiff's copyrighted web pages without

15   Plaintiff's consent, because the buttons at the bottom of Defendants' eadgear.ca link directly to

16   Plaintiff's copyrighted web pages.  Compl. ¶ 37.

17        In support of Claim Five (cyberpiracy), Plaintiff alleges that all the Defendants have

18   committed cyberpiracy.  Compl. ¶ 41.  Plaintiff alleges that Defendants did so by registering

19   eadgear.ca, which is confusingly similar to Plaintiff's eadgear.com mark.  *Id.*  Plaintiff further

20   alleges that Defendants acted willfully and intentionally to misappropriate Plaintiff's prestige and

21   goodwill.  Compl. ¶ 42.

22        In support of Claim Six (unfair competition), Plaintiff alleges that Defendants fraudulently

23   registered www.eadgear.ca and solicited customers to transfer business to zeekrewards.com.

24   Plaintiff alleges that these actions constitute unlawful, unfair, or fraudulent business practices and

25   unfair deceptive, untrue, or misleading advertising within the meaning of California Business &

26   Professions Code §§17200, *et seq.* and common law.  Compl. ¶ 45.

27        In support of Claim Seven (defamation), Plaintiff alleges that Defendants' statements were

28   unprivileged, exposed Plaintiff to disgrace, injured Plaintiff in occupation and business, and were

United States District Court

For the Northern District of California

1   made with actual fault or malice and caused damages to Plaintiff.  Compl. ¶ 48.  Plaintiff alleges

2   that these statements were a violation of California Civil Code § 45.  Compl. ¶ 47-49.

3          In support of Claim Eight (accounting), Plaintiff demands accounting from all listed

4   Defendants under common law.  Compl. ¶ 50-53. Plaintiff alleges that Defendants have been

5   unjustly enriched through fraudulent activities and by converting Plaintiff's mark and copyright,

6   which has caused Plaintiff to lose sales.  Compl. ¶ 52.  Plaintiff further alleges that these infringing

7   activities have led to substantial profits for Defendants, to which Plaintiff is entitled under common

8   law.  Compl. ¶ 50-53.

9          In support of Plaintiff's claim for lost profits, Plaintiff submitted a chart showing the

10  membership revenue and the number of new members generated for the three months prior to and

11  three months after the opening of Defendants' website. Wang Decl. ¶ 17.  In his declaration, Plaintiff

12  detailed the number of new members and business revenue from the period of July to December

13  2011, that showed a revenue increase of $303,960 from July ($305,420) to September 2011

14  ($609,380).  Wang Decl. ¶ 17. After the online posting by Liu, Plaintiff contends the company

15  suffered a net loss of $398,006.  *Id.*  Plaintiff obtains this figure by subtracting the lowest monthly

16  revenue of $211,294.95 in December 2011 from the peak revenue of $609,380 in September 2011,

17  which totals $398,006.00 ($609,380.00 - $211,294.95).  *Id.*  Plaintiff also asks to be compensated for

18  the previous rate of revenue growth (measured from July to September 2011) for the months after

19  Liu's posting, as Plaintiff seems to suggest that the company would have continued to grow at the

20  same rate "but for" Defendant's actions.  *Id.*  Plaintiff arrives at this figure by subtracting the

21  revenue in July 2011 ($305,420.00) from the peak monthly revenue in September 2011

22  ($609,380.00), which totals $303,960.00. Plaintiff then employs the formula ($303,960 x 3/2 month)

23  + $398,006 to determine its total alleged lost profits: $853.946.00.  *Id.*

24          **B.     Motion**

25          In the motion, Plaintiff seeks entry of default judgment by this Court and the following

26  remedies: 1) an injunction prohibiting Defendants from "engaging in any additional infringing,

27  defamatory, or unfair competition acts" and ordering either the transfer of the domain name

28  eadgear.ca to Plaintiff or the cancellation of the domain registration altogether; 2) statutory damages

**United States District Court**
For the Northern District of California

1   for seven acts of copyright infringement for the previously listed web pages pursuant to 15 U.S.C.

2   §504(c) for the maximum amount, totaling $1,050,000 (7 x $150,000); 3) compensatory damages for

3   the loss of business Plaintiff contends has resulted from Defendants' conduct, in the amount of

4   $853.946.00; and 5) attorneys' fees and costs pursuant to 15 U.S.C. §1125(d)(1)(c).  Wang Decl.

5   ¶17-21.   In support of the motion, Plaintiff filed the Declaration by Danning Jiang in Support of

6   Plaintiff's Application for Default Judgment by Court ("Jiang Decl."), and the Declaration of

7   Charles Wang in Support of Plaintiff's Application for Default Judgment by Court. ("Wang Decl.").

8   Plaintiff also provided copies of the seven copyrighted web pages that were allegedly copied via

9   links, and a copy of Defendants' allegedly infringing website eadgear.ca.  Also filed concurrently

10  was the Proposed Order for Default Judgment and Permanent Injunction.

## III.    ANALYSIS

### A.    Personal Jurisdiction

13         As a preliminary matter, this Court must determine whether or not it has personal jurisdiction

14  over Defendants Lewis Liu, eadgear.com, zeekrewards.com, Xinzheng Co., and Xinzheng (America)

15  Inc., who are alleged to have their principal place of business in New York, but are organized under

16  the laws of New York or China.  Compl. ¶ 6; *See also In re Tulli,* 172 F.3d 707, 712 (9th Cir. 1999)

17  (holding that the court properly raised sua sponte the question of whether there was personal

18  jurisdiction over Iraq before determining whether default judgment should be entered).  In *Tulli*, the

19  Ninth Circuit explained that where a plaintiff seeks default judgement, the court may not assume the

20  existence of personal jurisdiction, even though ordinarily personal jurisdiction is a defense that may

21  be waived, because a judgment in the absence of personal jurisdiction is void. *Id*.  Where there are

22  questions about the existence of personal jurisdiction in a default situation, the court should give the

23  plaintiff the opportunity to establish the existence of personal jurisdiction.  *Id*.

24         Personal jurisdiction in this district is proper provided it is consistent with California's long-

25  arm statute and comports with due process of the law. *Boschetto v. Hansing,* 539 F.3d 1011, 1021-22

26  (9th Cir. 2008).  Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, federal courts

27  in California may exercise jurisdiction to the extent permitted by the Due Process Clause of the

28  Constitution. *Id*.  The Due Process Clause allows federal courts to exercise jurisdiction where

either: 1) the defendant has had continuous and systematic contacts with the state sufficient to subject him or her to the general jurisdiction of the court; or 2) the defendant has had sufficient minimum contacts with the forum to subject him or her to the specific jurisdiction of the court. *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

> The courts apply a three-part test to determine whether specific jurisdiction exists: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Id.* (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (quotation marks omitted)).  As discussed below, the factual allegations and evidence support a finding of specific jurisdiction over the Defendants.[1]

### 1.      Purposeful Availment

In order to satisfy the first prong of the test for specific jurisdiction, a defendant must have either purposefully availed itself of the privilege of conducting business activities within the forum or purposefully directed activities toward the forum. *Panavision*, 141 F.3d at 1320.  The purposeful availment element can be satisfied based on a party's tortious conduct directed at the forum. *See Panavision*, 141 F.3d at 1322.  Purposeful direction exists when a defendant has committed an act outside of the forum state that was intended to and does in fact cause injury within the forum. *Calder v. Jones*, 465 U.S. 783, 788-89 (1984).  Under the *Calder* "effects test" the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) that causes harm the defendant knows is likely to be suffered in the forum state. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)).  Here, Plaintiff has satisfied the *Calder*

---

[1] Because Plaintiff has not pointed to facts indicating that Defendants' contact with California is continuous and systematic, and because this Court concludes that specific jurisdiction exists, the Court need not reach the question of whether it has general jurisdiction over the Defendant.  The Court notes, however, that the standard for establishing general jurisdiction is high, requiring that a defendant's contacts approximate physical presence. *Bancroft & Masters v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Based on the facts alleged in the Complaint, it does not appear that this standard is met.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1  "effects test," and therefore has demonstrated that Defendants have purposefully directed their

2  tortious conduct at the forum.

### Intentional Act

4  The intentional act element is satisfied where the defendant performs an act with the intent to

5  perform an actual, physical act; the defendant need not have the intent to accomplish a result or

6  consequence of the act.  *Id.*  Here, Defendants committed an intentional act by operating their own

7  website that posted statements about Plaintiff's business.  *See Rio Props., Inc. v. Rio Int'l Interlink*,

8  284 F.3d 1007, 1020 (9th Cir. 2002) (operating a passive website was an intentional act).

### Express Aiming

10  The defendant's conduct must be expressly aimed at the forum to satisfy the second part of

11  the effects test.  *Brayton*, 606 F.3d at 1130.   The Ninth Circuit has emphasized that "'something

12  more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction, .

13  . . and that 'something more' means conduct expressly aimed at the forum."  *Id.* at 1129 (internal

14  citations omitted).  The maintenance of a passive website alone does not satisfy the express aiming

15  requirement, but "operating a passive website in conjunction with 'something more' – conduct

16  directly targeting the forum – is sufficient."  *Rio Props.*, 284 F.3d at 1020.  In *Brayton,* the Ninth

17  Circuit held that a defendant that had copied content from the plaintiff's website and placed it on its

18  own website was directly aimed at the forum because, under the facts of that case, the defendant had

19  intentionally entered into direct competition with the plaintiff for customers within the forum.  606

20  F.3d at 1129.

21  Here, the Court finds that Defendants' conduct was expressly aimed at California.  First, like

22  *Brayton*, because Plaintiff and Defendants both offer online advertising services on a nationwide

23  basis they are in direct competition with each other. Also, Defendant Liu was a "member" and

24  "salesperson" of Plaintiff's, so its clear that Defendants knew or should have known they were

25  expressly targeting a California corporation.  Plaintiff claims that Defendants violated eadgear.com's

26  mark by posting negative statements, and by confusing consumers as to the origin of Defendant's

27  services, which resulted in harm suffered by Plaintiff's business in California.  Through these

28  actions, Defendants have expressly aimed their tortious conduct at California.

**United States District Court**
For the Northern District of California

*Foreseeable Harm*

The third element of the *Calder* "effects" test requires that the defendant's intentional act must have foreseeable effects in the forum. *Brayton*, 606 F.3d at 1131. "[T]his element does not require that the brunt of the harm be suffered in the forum, . . . [it] may be established even if 'the bulk of the harm' occurs outside the forum." *Id.* In *Brayton*, the court held it was foreseeable that Brayton Purcell would suffer harm as a result of the defendant's infringement of its copyrighted materials, including harm to its business reputation and lost profits. *Id.* In *Mavrix*, 647 F.3d 1218, 1231 (9th Cir. 2011), the court stated that, in determining the foreseeable harm to a corporation, economic harm can be suffered both where the bad acts occurred and where the corporation has its principal place of business. (citing *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002) ("[J]urisdictionally sufficient harm may be suffered in multiple forums.")). Accordingly, the court in *Mavrix* reasoned it was foreseeable that the defendants' republishing of the plaintiff's copyrighted photos would cause economic harm by destroying the market value of the photos. *Id.* Furthermore, this harm was foreseeable not only in Florida, the plaintiff's principal place of business, but also in California, where a significant number of California residents would have purchased publications containing the photos. *Mavrix*, 647 F.3d at 1231-32.

Here, it was foreseeable that Defendants' negative statements regarding Plaintiff's website, and operating their own website with a confusingly similar name, would cause harm to Plaintiff in California. By failing to appear or otherwise defend this action, it is deemed admitted that Defendants foresaw that their actions would affect Plaintiff's business.

In sum, because Plaintiff has satisfied all three elements of the *Calder* "effects" test, the first prong of establishing specific personal jurisdiction has been established.

### 2. Claims Arise out of Forum Related Activities

The second prong of the test for specific jurisdiction requires that the claim be one that arises out of or relates to the defendant's activities in the forum. *Panavision*, 141 F.3d at 1320. This requires a showing of "but for" causation. *Id.* at 1322 ("We must determine if the plaintiff Panavision would not have been injured 'but for' the defendant Toeppen's conduct directed toward Panavision in California."). Here, Defendants' contacts with the forum are the infringement and use

1  of a confusingly similar domain name belonging to a corporation registered in this state, which was

2  registered after Defendant Liu became a member and salesperson for Plaintiff's company.

3  Therefore, the Court finds that "but for" Defendants' infringing activity, Plaintiffs would not have

4  been injured.  Accordingly, the Court concludes that the second requirement for specific jurisdiction

5  is satisfied.

6  **3.      Reasonableness of Exercise of Jurisdiction**

7          The third prong of the test for specific jurisdiction provides that the exercise of jurisdiction

8  must comport with fair play and substantial justice.  *Id.* at 1320.  To determine whether the exercise

9  of jurisdiction over a non-resident defendant comports with fair play and substantial justice, a court

10  must consider seven factors:

11          (1) the extent of the defendants' purposeful interjection into the forum state's affairs;
       (2) the burden on the defendants of defending in the forum; (3) the extent of conflict
12       with the sovereignty of the defendants' state; (4) the forum state's interest in
       adjudicating the dispute; (5) the most efficient judicial resolution of the controversy;
13       (6) the importance of the forum to the plaintiff's interest in convenient and effective
       relief; and (7) the existence of an alternative forum.

14

15  *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  There is a presumption

16  that the exercise of jurisdiction is reasonable when the first two prongs of the specific jurisdiction

17  test have been met.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.

18  2004) (stating that after the plaintiff meets his burden to satisfy the first two prongs, the burden then

19  shifts to the defendant to present a "compelling case" that jurisdiction is unreasonable).  The

20  reasonableness factors enumerated in *Core-Vent* weigh in favor of finding that the exercise of

21  jurisdiction comports with fair play and substantial justice in this case.

22          First, the extent of Defendants' purposeful interjection into the forum state's affairs is

23  unknown, as Plaintiff has not alleged or presented evidence of the number of customers Defendants

24  targeted in this forum.  Therefore this factor is neutral.

25          Second, while there is some burden on Defendants to litigate in California, the inconvenience

26  is not so great as to deprive them of due process, particularly given Defendants' purposeful

27  availment of the benefits of conducting business within the forum.  *See Panavision*, 141 F.3d at 1323

28  ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but

1   unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not

2   overcome clear justifications for the exercise of jurisdiction.'").  Therefore, this factor weighs in

3   favor of California's exercise of jurisdiction.

4        Third, personal jurisdiction is disfavored where it potentially creates a conflict with the

5   sovereignty of another state.  In the present case, there is nothing in the record that indicates the

6   exercise of personal jurisdiction over Defendants would create a conflict with the sovereignty of

7   New York or any foreign countries.  Therefore, this factor favors the exercise of jurisdiction in

8   California. *CE Distrib. LLC, v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2007).

9        Fourth, the forum state has a strong interest in adjudicating this dispute.  Plaintiff is a

10  California based corporation. Plaintiff claims to have suffered damage as a result of Defendants'

11  statements and alleges that Defendants have directly caused a loss in revenue due to consumer

12  confusion. Because of the potential damage to a California based corporation, California has an

13  interest in adjudicating this dispute.

14       Fifth, consideration of the most efficient judicial resolution is "no longer weighed heavily

15  given the modern advances in communication and transportation."  Therefore this factor is also

16  neutral because there may be witnesses and evidence located in California, New York, and other

17  countries. *Id.*

18       Sixth, with respect to the importance of the forum to the plaintiff's interest in convenient and

19  effective relief, courts generally give little weight to the plaintiff's inconvenience. *See id.*  Here, a

20  forum is likely available in the state of New York, and Plaintiff has not provided any evidence or

21  allegations as to whether it would be costly and inconvenient for Plaintiff to litigate in New York. So

22  this factor is neutral.

23       Seventh, with respect to the existence of an alternative forum, Defendants have not come

24  forward to request an alternative forum.  Therefore, this factor is neutral.

25        Balancing these seven factors, the Court concludes that the exercise of jurisdiction over

26  Defendants is reasonable.

27

28

**United States District Court**
For the Northern District of California

12

**United States District Court**
For the Northern District of California

**B.**      **Legal Standard Regarding Entry of Default Judgment**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. Fed. R. Civ. Proc. 8(b)(6); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (stating the general rule that "upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).

"Granting or denying a motion for default judgment is a matter within the court's discretion." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 2010 WL 2889490, at *2 (C.D. Cal. Jul. 19, 2010) (quoting *Elektra Entm't Group Inc. v. Bryant*, No. CV 03-6381 GAF (JTLx), 2004 WL 783123, at *1 (C.D. Cal. Feb.13, 2004)). The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment:

> (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

As a preliminary matter, we must first decide to which of the Defendants this default judgment should apply. Plaintiff has provided convincing evidence regarding the actions of Defendant Liu as to several of the claims.[2] However, the link to Xinzheng Co. and Xinzheng (America) Inc. is too tenuous. Plaintiff first claims the domain zeekrewards.com  was registered by Liu, Xinzheng Co. and/or Xinzheng (America) Inc. either jointly or individually, as an alterego of eadgear.ca.. Compl. ¶ 5. However later Plaintiff seems to contradict this allegation by stating Liu

---

[2] The Complaint also names two websites which are no more than web addresses. There is no evidence before the court that the websites identified are separate business entities. Default judgment against these non-entities is not appropriate.

**United States District Court**
For the Northern District of California

1  registered eadgear.ca on April 8, 2011, with no mention of the other two entities.  Compl. ¶ 14.

2  While there are various statements as to Xinzheng Co. and Xinzheng (America) Inc. "sponsoring" or

3  "conspiring" with Defendant Liu, there are no well pleaded factual allegations of conduct by these

4  entities, and the court should not enter default judgment as to those parties.

5      **C.**      ***Eitel* Factors**

6          **1.      Possibility of Prejudice to Plaintiff**

7          The first Eitel factor considers whether plaintiffs will suffer prejudice if a default judgment is

8  not entered.  *Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

9  To the extent that Defendants have failed to appear in, or otherwise defend this action, Plaintiff will

10  be left without a remedy if default judgment is not entered in their favor.  Therefore, this factor

11  weighs in favor of entry of default judgment.

12          **2.      Excusable Neglect**

13          There is no evidence in the record that Defendants' failure to appear or otherwise defend was

14  the result of excusable neglect.  Rather, Defendants failed to appear after being served with the

15  Complaint in this action, indicating that their failure to appear was willful.  Therefore, this factor

16  favors entry of default judgment.

17          **3.      Amount at Stake**

18          This factor balances the amount of money at stake in the claim in relation to the seriousness of

19  the defendant's conduct.  *Eitel*, 782 F.2d at 1471-72.  Here, Plaintiff initially prayed for injunctive

20  relief and for several forms of monetary damages, including general, statutory and punitive.  Compl.

21  at p. 10.  Plaintiff seeks injunctive relief in this case to prevent economic harm, protect its business

22  reputation, protect its mark, prevent consumer confusion, and prevent other harm that was caused by

23  Defendants' conduct.  *Id.*  In addition, Plaintiff seeks $853,946 in compensatory damages, and

24  $1,050,000 in statutory damages.  Wang Decl. ¶¶ 17-18.  Despite the sizable sum involved, given the

25  seriousness of the allegations and the need to deter such behavior in the future, the amount in

26  question is not necessarily excessive. Therefore, this factor is also neutral.

27

28

1

### 4.      Possibility of Dispute

This factor weighs the possibility that material facts may be in dispute. *Eitel*, 782 F.2d at 1471-72. Here, because Defendants have failed to respond in this action, there is an absence of material facts in dispute in the record from which the Court may weigh this factor. Therefore, this factor is neutral.

### 5.      Policy for Deciding Cases on the Merits

The court also must weigh the policy consideration that whenever reasonably possible, cases should be decided upon their merits. *Id.* at 1472. The existence of Rule 55(b), though, indicates that this preference towards disposing of cases on the merits is not absolute. *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, because Defendants have failed to respond in this action, deciding this case on its merits is not possible. Therefore, this factor is neutral.

### 6.      Allegations and Substantive Merits of Claims

#### i.      False Designation of Origin  in violation of the Lanham Act; 15 U.S.C. § 1125 (a)

Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(a)(1), provides as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin . . . which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125 (a)(1).

Under the Lanham Act, a prima facie case is established upon a showing that the defendant made a false statement either about its own product or service or the plaintiff's. *PhotoMeddex, Inc. v. Irwin*, 601 F.3d 919, 929 (9th Cir. 2010) (citing *Newcal Indus, Inc. v. Ikon Office Solution*, 513 F.3d

1038, 1052 (9th Cir. 2008)).  A false statement is established either by showing that the statement was literally false, or by showing the statement was literally true but was likely to mislead or confuse consumers as evidenced by consumer surveys.  *Mutual Pharm. Co. v. Ivax Pharm., Inc.*, 459 F. Supp. 2d 925, 932 (C.D. Cal. 2006) (citing *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139-40 (9th Cir. 1997)).  Where the statement in question is literally false, a violation may be established without evidence of consumer confusion. *Id.* at 933 ; *see also iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*, Case No. 11–0592 CW, 2011 WL 6291793, *6 (N.D. Cal. 2011) (holding that the posting of shill reviews regarding Plaintiff's website by Defendant was sufficient to adequately plead a Lanham Act claim). Under the Lanham Act, 15 U.S.C. § 1125(a) the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. *Smith v. Chanel, Inc.*, 402 F.2d 562, 563 (9th Cir. 1968); *Hesmer Foods, Inc. v. Campbell Soup Co.*, 346 F.2d 356, 359 (9th Cir. 1965) (holding whether we call the violation infringement, unfair competition or false designation of origin, the test is identical: is there a "likelihood of confusion?").

In the present case, Plaintiff claims that Defendants' posting of impending negative BBB reviews was literally false and if not literally false was likely to confuse customers.  Compl. at ¶¶ 22, 28, 42.  In addition, Plaintiff asserts that the statement on eadgear.ca referring to Plaintiff's lack of a Hong Kong holding company is also literally false.  Wang Decl. Ex. 1, p. 3 (Eadgear.com).  Plaintiff further claims that these statements were made in the course of advertising Defendants' services and were likely to affect the decisions of members of both parties' target audience - consumers of online advertising services.  *Id.* at ¶¶ 14-16.  Also, the similarity between the domain names eadgear.com and eadgear.ca was also likely to cause confusion amongst customers as to the affiliation of the two companies.  Therefore, the Court finds that Plaintiff has adequately pleaded the false designation of origin claim and therefore the entry of default judgment is appropriate.

ii)      **Trademark Dilution - Cal. Bus. & Prof. Code §§ 14330,** *et seq.*

To find a violation of a state claim of trademark dilution under Cal. Bus. & Prof. Code §§ 14330, *et seq.***,** the court is required to apply the same framework as the federal trademark dilution claim: the Federal Trademark Dilution Act. *See Panavision*, 141 F.3d at 1324.

1    In order to prove a violation of the Federal Trademark Dilution Act, a plaintiff must show that

2    (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3)

3    the defendant's use began after the mark became famous; and (4) the defendant's use of the mark

4    dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish

5    goods and services. 15 U.S.C. § 1125(c).

6    However, the Federal Trademark Dilution Act is simply an amendment to the Lanham Act. 15

7    U.S.C.A. 1051. This Court has already found that Plaintiff has adequately stated a claim under the

8    43(a) of the Lanham Act, and because this state claim would offer no additional remedies, it sees no

9    reason to address this issue any further.

10        **iii)        Copyright Infringement in violation of 17 U.S.C. § 501**

11    Plaintiff has provided screenshots of several of its web pages linked to by eadgear.ca in

12    support of its copyright violation claim under 17 U.S.C. §§ 501, *et seq*. Compl. Ex. 4; *see also* Jang

13    Decl. Ex. 5-11. However, hyperlinking alone does not constitute copyright infringement, since it

14    does not involve any actual copying. *Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV 99–7654, 2000

15    WL 525390, at *2 (C.D. Cal. Mar. 27, 2000) (unpublished) ("[H]yperlinking does not itself involve a

16    [direct] violation of the Copyright Act (whatever it may do for other claims) since no copying is

17    involved."); *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1202 n. 12 (N.D. Cal. 2004)

18    ("[H]yperlinking per se does not constitute direct copyright infringement because there is no copying,

19    [although] in some instances there may be a tenable claim of contributory infringement or vicarious

20    liability."); *Bernstein v. JC Penney, Inc.*, No. 98–2958, 1998 WL 906644, at *1 (C.D. Cal. Sept. 29,

21    1998) (unpublished) (granting, without discussion, defendant's motion to dismiss on the ground that

22    hyperlinking cannot constitute direct infringement); *Arista Records, Inc. v. MP3Board, Inc.,* No. 00

23    CIV. 4660, 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002) (unreported) (linking to content does

24    not implicate distribution right and thus, does not give rise to liability for direct copyright

25    infringement). Because Plaintiff has thus far provided insufficient evidence to prevail on its

26    copyright infringement claim, it is recommended that default judgment on this claim be DENIED.

27

28

**United States District Court**
For the Northern District of California

17

**United States District Court**
For the Northern District of California

**iv)     Cyberpiracy, in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)**

In order to state a claim for cyberpiracy under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), a trademark owner must show the defendant (1) registered, trafficked in, or used a domain name, (2) that is confusingly similar to the plaintiff's trademark, and (3) had a bad faith intent to profit from that domain name.  15 U.S.C. § 1125(d)(1)(A); *Verizon Cal. Inc. v. Navigation Catalyst Sys., Inc.*, 568 F. Supp. 2d 1088, 1094 (C.D. Cal. 2008). The Anticybersquatting Consumer Protection Act, which amended the Lanham Act, states:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person–
>
> > (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> >
> > (ii) registers, traffics in, or uses a domain name that--
>
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

15 U.S.C. 1125(d)(1)(A).

In determining whether there is a likelihood of confusion under the ACPA, courts compare the plaintiff's mark with the name of the website.  *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 782 (8th Cir. 2004) (holding that there was a likelihood of confusion under the ACPA where defendant had registered websites including www. my-washingtonpost.com, www.mymcdonalds.com and www.drinkcoke.org); *see also Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (E.D. Pa. 2002) (holding that plaintiff owning Louis Vuitton mark was entitled to default judgment on ACPA claim based on defendant's use of domain name www.LouisVuitton- replicas.com).

A court should not look beyond the domain name to consider the content of the website.  *Purdy*, 382 F.3d at 783.  "The inquiry under the ACPA is thus narrower than the traditional multifactor likelihood of confusion test for trademark infringement." *Id.*  Consequently, even if it might be evident from the content of the website that it is not sponsored by or affiliated with the plaintiff, there may nonetheless be a violation of the ACPA.  *Id.*; *see also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359 (4th Cir. 2001) (holding that domain name www. peta.org violated the ACPA because it was identical to the mark of the plaintiff, People for the Ethical

1   Treatment of Animals, even though a visit to the site itself revealed that it was a parody and that the

2   initials "peta" stood for People Eating Tasty Animals).

3       On the other hand, if the name of the domain at issue itself makes clear that it is not affiliated

4   with the plaintiff, there can be no likelihood of confusion.  *See, e.g.*, *The Taubman Co. v. Webfeats*,

5   319 F.3d 770, 777 (6th Cir. 2003) (holding that there was no likelihood of confusion

6   on part of plaintiff who owned Taubman mark where defendant operated website with domain name

7   www.taubmansucks.com); *Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161 (C.D.

8   Cal. 1998) (holding there was no likelihood of confusion on part of plaintiff owning Bally mark

9   where defendant operated website with domain name www.ballysucks.com).

10      Here, Plaintiff asserts that Defendants have violated the ACPA through the registration and

11  operation of eadgear.ca.  Defendants registered and began using this domain name several months

12  after Plaintiff registered his domain name on November 16, 2010.  Compl. at ¶¶ 12, 14.  Additionally,

13  there is little question that Defendants operated this website with bad faith intent to make a profit

14  because, assuming the allegations in the complaint to be true, it contained false or misleading

15  information about the Plaintiff, and was created after Liu became a member of Plaintiff's services.

16  The determining factor, then, is whether this domain name is "identical or confusingly similar" to the

17  eadgear.com mark.  The Court concludes that this domain name is confusingly similar to the

18  eadgear.com mark because it uses the eadgear name and it does not make clear that it is not affiliated

19  with Plaintiff.  Therefore, the entry of default judgment is appropriate as to Plaintiff's cyberpiracy

20  claim.

21          **v)      Unlawful Business Practices and Unfair Competition - Cal. Bus. &
                      Prof. Code § 17200 and common law**

22

23      Plaintiff alleges that Defendants' conduct described above constitutes unlawful business

24  practices and unfair competition in violation of California Business & Professions Code §§ 17200, et.

25  seq.  Compl. at ¶¶ 44-46.   Section 17200 provides that ". . .unfair competition shall mean and include

26  any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

27  advertising. . . ."  Cal. Bus. & Prof. Code § 17200.   The plaintiff need only allege one of the three

28  theories - unlawful, unfair or fraudulent business practice - to properly plead a claim under section

17200.  *Med. Instrument Dev. Lab. v. Alcon Lab.*, 2005 WL 1926673, at *5 (N.D. Cal. Aug. 10,

1   2005).

2       Unlawful business practice includes anything that is a business practice but is also forbidden

3   by law. *Somerville v. Stryker Orthopaedics*, 2009 WL 2901591, at *2 (N.D. Cal. Sep. 4, 2009).

4   Unfair business practice refers to any practice whose harm outweighs any benefits. *Id.* "The court

5   must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

6   victim." *Id.* (quoting *Gafcon, Inc. v. Ponsor & Assoc.*, 98 Cal. App. 4th 1338, 1425 n.15 (2002)).

7   Finally, fraudulent business practice requires a showing that members of the public are likely to be

8   deceived by defendants' conduct, but allegations of actual deception are unnecessary. *Id.*

9       Here, the Court finds that Defendants' conduct violated Cal. Bus. & Prof. Code § 17200 for

10  two reasons. First, the allegations presented by Plaintiff indicate that Defendants' conduct was unfair

11  and fraudulent. Defendants' posting of misleading information unfairly affected Plaintiff's business

12  opportunities and fraudulently deceived consumers regarding its online advertising services on the

13  internet. Second, "[t]his circuit has consistently held that state common law claims of unfair

14  competition pursuant to [§ 17200] are 'substantially congruent' to claims made under the Lanham

15  Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). Therefore, because Plaintiff has

16  adequately pleaded its Lanham Act claim, discussed above, Plaintiff's § 17200 claim is also

17  adequately pleaded. However, because the two claims are substantially congruent, and the state

18  claim offers no additional relief, default judgment as to the state claim is unnecessary.

19                  **vi)       Defamation – CA Civil Code § 45**

20      There are two types of definition under California law: libel in written form, and slander in its

21  verbal form. Cal. Civ. Code § 44. "Libel is a false and unprivileged publication by writing, printing,

22  picture, effigy, or other fixed representation to the eye, which exposes any person to hatred,

23  contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a

24  tendency to injure him in his occupation." Cal. Civ. Code § 45.

25      The elements of a libel claim are: (1) the intentional publication of a fact; (2) that is false; (c)

26  unprivileged; and (4) has a natural tendency to injure or cause special damage. *Smith v. Maldonado*,

27  72 Cal. App. 4th 637, 645 (1999). "Publication means communication to some third person who

28  understands the defamatory meaning of the statement and its application to the person to whom

reference is made." *Id.* (citations omitted).

Given the facts alleged and the evidence provided, Plaintiff's claim most closely fits the definition of trade libel, not defamation under Cal. Civ. Code §45.  Trade libel is the intentional disparagement of the quality of property which results in pecuniary damage to plaintiff.  *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 984 (N.D. Cal. 2010).  Unlike classic defamation, trade libel is not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells or the character of his other business.  *Aetna Cas. & Sur. Co. ., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988) (citing *Guess, Inc. v. Super. Ct.*, 176 Cal. App. 3d 473, 479 (1986)).  In order to state a claim for trade libel, the plaintiff must show (1) a statement that (2) was false, (3) disparaging, (4) published to others, (5) induced others not to deal with it, and (6) caused special damages in the form of pecuniary loss.  *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004).  In making this determination, the court must decide the "natural and probable effect" of the statement as read by an "average reader." *Robinson*, 732 F. Supp. 2d at 985 (citing *Hofmann*, 202 Cal. App. 3d at 398).

Here Plaintiff's evidence of special damages is too speculative, as discussed below.  "A bare allegation of the amount of pecuniary loss is insufficient for the pleading of a trade libel claim." *New.Net,* F. Supp. 2d at 1113 (quoting *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998).   The Court should decline to enter judgment on this claim.

### vii)   Conclusion

Based on consideration of the factors discussed above, it is recommended that default judgment be entered against Defendants on the following claims: false designation of origin, under the Lanham Act § 43(a), 15 U.S.C. § 1125(a);  and cyberpiracy, in violation of the Anticybersquatting Consumer Protection Act, under 15 U.S.C. § 1125(d).

### E.   Remedies

#### 1.   Injunctive Relief

Plaintiff requests that the Court grant a permanent injunction barring Defendants from further interfering with Plaintiff's business.  In particular, Plaintiff requests entry of the following injunction:[3]

---

[3] This is the language suggested by Plaintiff for injunctive relief in the Proposed Order

Defendants and their officers, directors, employees, attorneys, partners, agents, subsidiaries, successors, assigns, affiliates and any and all persons and entities under Defendants' direction or control, or in active concert or participation with any of them, are immediately and permanently enjoined and restrained throughout the world from:

A. Using any reproduction, counterfeit, copy or colorable imitation or designation confusingly similar to the eAdGear Trademarks and Copyrights or to identify any goods or the rendering of any services not authorized by Plaintiff;

B. Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiff's business reputation, or to dilute the distinctive quality of Plaintiff's name and Plaintiff's eAdGear Trademarks and Copyrights;

C. Using a false description or representation including words or other symbols tending to falsely describe or represent Defendants' unauthorized goods as being those of Plaintiff or sponsored by or associated with Plaintiff and from offering such goods into commerce;

D. Further infringing Plaintiff's trademarks and/or copyrights by manufacturing, importing, exporting, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products not authorized by Plaintiff bearing any simulation, reproduction, counterfeit, copy, colorable imitation, or confusingly similar or substantially similar designation of Plaintiff's eAdGear Trademarks and Copyrights;

E. Counterfeiting Plaintiff's eAdGear Trademarks and Copyrights by manufacturing, importing, exporting, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products not authorized by Plaintiff bearing any simulation, reproduction, counterfeit, copy, colorable imitation, or confusingly similar or substantially similar designation of Plaintiff's eAdGear Trademarks and Copyrights;

F. Using any simulation, reproduction, counterfeit, copy, colorable imitation or confusingly similar or substantially similar designation of the eAdGear Trademarks and Copyrights in connection with the rental, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiff, or to any goods or services sold, manufactured, sponsored or approved by, or connected with Plaintiff;

G. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public; or individual members thereof, to believe that any products manufactured, distributed, sold or rented by Defendants is in any manner associated or connected with Plaintiff, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff;

H. Dealing in any goods and services that constitute counterfeits or infringements of any of the eAdGear Trademarks and Copyrights or that infringe or impair Plaintiff's rights in, or to use or to exploit, said eAdGear Trademarks and Copyrights, or constituting any dilution of Plaintiff's name, reputation or goodwill;

**United States District Court**

For the Northern District of California

22

I. Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the manufacturing, importing, exporting, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe Plaintiff's eAdGear Trademarks and Copyrights;

J. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in paragraphs "A" through

"I", above, including without limitation assisting, aiding or abetting any other person or business entity to engage in or perform any of the above described acts.

[Proposed] Order Granting Plaintiff's Motion for Default Judgment and Permanent Injunction ("[Prop] Order") ¶¶ 4.

Injunctive relief is appropriate for violations of the Lanham Act. *See* 15 U.S.C. §§ 1116, 1125. Even if an advertisement is not literally false, relief is available under the Lanham Act "if it can be shown that the advertisement has misled, confused, or deceived the consuming public." *Id.* (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997). With respect to a violation of the Anticybersquatting Consumer Protection Act, "a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(c).

Here, the Court finds that Plaintiff is entitled to injunctive relief, but not as broadly as it requests above. As explained previously, Plaintiff has adequately pleaded its claims for false designation of origin under the Lanham Act and violation of the Anticybersquatting Consumer Protection Act under 15 U.S.C. § 1125(d). Plaintiff has also shown that Defendant's conduct may confuse or mislead potential consumers shopping for Plaintiff's services. Furthermore, because eadgear.ca's content and the confusingly similar domain names, without the Court's intervention, Defendant's conduct will continue to harm Plaintiff's business opportunities and reputation. Plaintiff has demonstrated probable success on the merits of these two claims and the possibility of irreparable harm, so an injunction shall be granted. However, any language in the proposed injunction that goes beyond the scope of these two claims is overly broad, and shall be removed.

As to the second form of relief requested, the transfer of the domain name to the Plaintiffs, the Court also finds Plaintiff's request to be reasonable and necessary even though it will be directed in

United States District Court

For the Northern District of California

1    part to entities that are not parties to this action.  This Court has specifically addressed the issue of

2    enforcing its order on a third party in the context of a similar trademark infringement action and has

3    concluded that under 15 U.S.C. § 1116, the Court is authorized to issue such an order against a third

4    party because it is necessary to effectuate the purposes of the injunction.  *Chanel, Inc., v. Lin*, 2010

5    WL 2557503, at *12 (N.D. Cal. May 7, 2010); *see also Louis Vuitton Malletier, S.A. v. Absolutee*

6    *Corp., Ltd.*, Case No. 3:09-cv-05612 MMC (N.D. Cal. Apr. 19, 2010) (ordering transfer of domain

7    names on default judgment where plaintiff asserted claims for trademark infringement and false

8    designation of origin under Lanham Act but did not assert cyberpiracy claim).  As stated above,

9    Plaintiff has provided evidence showing the Defendant created the website eadgear.ca in bad faith

10   and willfully.  Therefore, the second form of injunctive relief should be granted, and the domain

11   name eadgear.ca should be transferred to Plaintiff, as requested.  Prop. Order ¶ 5.

12                **2.    Monetary Relief**

13                        **i) Compensatory Damages**

14       Section 43(a) of the Lanham Act provides that a trademark owner may recover: (1)

15   defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  15

16   U.S.C. § 1117(a).  Because Plaintiff is unable to prove Defendants' profits due to Defendant's

17   default, Plaintiff seeks an award of damages equal to the amount of lost profits attributable to

18   Defendant's infringing activity.  Wang Decl. ¶ 17.  To recover damages under the Lanham Act, a

19   Plaintiff must prove both the fact and the amount of damages.  *Ringcentral, Inc. v. Quimby,* 711 F.

20   Supp. 2d 1048, 1062 (N.D. Cal. 2010); *Lindy Pen Co. v. Bic Pen Corp.,* 14 U.S.P.Q.2d 1528, 1531

21   (C.D.Cal.1989) *aff'd*, 982 F.2d 1400 (9th Cir.1993).  "As a general rule, damages which result from a

22   tort must be established with reasonable certainty....  '[D]amages are not rendered uncertain because

23   they cannot be calculated with absolute exactness,' yet a reasonable basis for computation must

24   exist." *Id.* at 1062-1063.

25       While this Court is sympathetic to the damages caused to Plaintiff's business and profits, the

26   evidence provided does not seem to prove the specific amount requested with sufficiently reasonable

27   certainty to award compensatory damages. Further, there is insufficient evidence to support the

28   contention that "but for" Defendant's actions, revenue would have continued to increase at the same

     rate as it did in the three months prior to the opening of Defendant's website. Therefore, the Court is

1   not persuaded that Plaintiff has provided a "reasonable basis for computation" of its lost profits.

2   *Quimby,* 711 F. Supp. 2d at 1064 (quoting *Lindy*, 982 F.2d at 1407).

3                                   **ii) Statutory Damages**

4          For claims involving false designation of origin under Section 43(a) of the Lanham Act 15

5   U.S.C. 1125(a), the law provides for recovery of lost revenue, disgorgement of a defendant's profits,

6   and in exceptional cases attorneys' fees. 17 U.S.C. § 1117(a). However, statutory damages for this

7   subsection are not provided for in the statute.  *Id.*

8          As to the cyberpiracy claim, 17 U.S.C. § 1117(d) does provide for statutory damages in lieu

9   of compensatory damages, which a plaintiff may elect to seek instead of lost profits at any point prior

10  to final judgment, in any case involving a violation of 15 U.S.C. Section 1125(d)(1).  15 U.S.C. §

11  1117(d).  The statutory damage award may be not less than $1,000, but not more than $100,000 per

12  infringed domain name.  *Id.*

13         Judges have broad discretion in assigning statutory damages within these limits.  "The court

14  has wide discretion in determining the amount of statutory damages to be awarded, constrained only

15  by the specified maxima and minima." *Columbia Pictures Television, Inc. v. Krypton Broad. of*

16  *Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citations omitted) (discussing statutory

17  damages provisions of the Copyright Act); *Kiva Kitchen & Bath Inc. v. Capital Distrib. Inc.*, 319 Fed.

18  Appx. 316, 320 (5th Cir. 2009) (unpublished) (quoting *Columbia Pictures*, 259 F.3d at 1194, for

19  identical proposition under the ACPA).  While the ACPA requires only that a court enter a damages

20  award that it "considers just," 15 U.S.C. § 1117(d), courts generally consider a number of factors in

21  making such determinations, such as the willfulness of the defendant's cybersquatting, the defendant's

22  use of false contact information to conceal its infringing activities, the defendant's status as a "serial"

23  cybersquatter, and other behavior by the defendant evidencing an attitude of contempt towards the

24  court or the proceedings.

25         Because Defendants have failed to defend this action, their infringement and other actions are

26  deemed willful. *Quimby,* 711 F. Supp. 2d at 1064.  In addition, the allegations (taken as true) indicate

27  the Defendant obtained a salesperson ID number from Plaintiff, and then used plaintiff's trademarks

28  to compete with Plaintiff. Defendant's willfulness and deception justify statutory damages in the

maximum amount of $100,000. See *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852-53

United States District Court
For the Northern District of California

(E.D.Mich.2006) (awarding the maximum amount of statutory damages available for infringement ($100,000) for defendants' willful maintenance of an infringing domain name and operation of an infringing website despite receipt of actual notice that their actions were unauthorized); *see also Verizon Cal., Inc. v. Onlinenic, Inc.*, 2009 WL 2706393 at *3 (N.D. Cal. Aug. 25, 2009) (awarding $50,000 per domain name for multiple violations); *Aztar Corp. v. MGM Casino*, WL 939070, at *5-6 (E.D. Va. Apr. 9, 2001) (imposing $100,000 statutory damages for infringing domain name based on defendant's "bad faith attempt to deceive Internet consumers and profit from the good will Plaintiff has generated in its famous TROPICANA mark," where defendant had registered "tropicanacasino.com"); *see also Biocryst Pharms, Inc. v. Namecheap.com*, No. CV-05-7615 JFW, at *4 (C.D. Cal. Nov. 21, 2006) (awarding $100,000 per domain name where defendant "knowingly provided false contact information concealing his registration and use of [the domain name]").

### iii) Attorneys' Fees

Plaintiff seeks an award of attorneys' fees in the amount of $10,957.  Jiang Decl. ¶ 12.  This amount is based on the time spent by attorneys Danning Jiang, Ashley X. Jiang, Nan Shen, and legal secretary Stefanie Yao. Jiang Decl. ¶11-15.

Attorney Danning Jiang has practiced since 1998, and his regular rate is $280/hour, but he billed Plaintiff at the rate of $252/hour for 37.90 hours.  Jiang Decl. ¶ 11-13.  Attorney Ashley X. Jiang was admitted by the California Bar in 2003, and has a regular rate of $245/hour, but billed Plaintiff at the rate of $220/hour, for a total of 2.80 hours. Jiang Decl. ¶ 12, 14. Attorney Nan Shen was admitted by the New York State Bar in 2007, regularly bills at $170/hour, and billed Plaintiff at the discounted hourly rate of $153/hour for 3.20 hours.[4]  *Id.*

Under the Lanham Act, attorneys' fees should only be granted in "exceptional" cases. The Ninth Circuit has held that "exceptional" refers to those cases where the defendant's behavior has been malicious, fraudulent, deliberate, or willful. See *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir.1984); *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982).  Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark. *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216-17 (9th Cir. 2003).

---

[4] The plaintiff also recites a rate of $60/hour for the legal secretary. This is properly classified as overhead and should not be awarded.

United States District Court

For the Northern District of California

1   Willfulness can also be inferred from a defendant's failure to defend. *Philip Morris USA, Inc. v.*

2   *Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003).  Here, because the Defendant's

3   conduct was willful and deceptive, Plaintiff is entitled to an award of attorneys' fees.

4   　　　The starting point for determining reasonable fees is the calculation of the "lodestar," which

5   is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable

6   hourly rate. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citing *Hensley v.*

7   *Eckerhart,* 461 U.S. 424, 103 (1983)).  In determining a reasonable number of hours, the court must

8   review records to determine whether the hours claimed by the applicant are adequately documented

9   and whether any of the hours claimed by the applicant were unnecessary, duplicative, or excessive.

10  *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on*

11  *other grounds,* 808 F.2d 1373 (9th Cir. 1987). To determine a reasonable rate for each attorney, the

12  court must look to the rate prevailing in the community for similar work performed by attorneys of

13  comparable skill, experience and reputation. Id. at 1210-11.

14  　　　Here the court finds the rates charged by Plaintiff's attorneys to be reasonable. However, the

15  declarations submitted do not provide sufficient detail to determine if the amount of time spent

16  working on the case was reasonable, no time sheets or additional affidavits were provided, and

17  Plaintiff's counsel failed to appear for the hearing.[5]  Therefore, it is recommended that Plaintiff's

18  request for attorneys' fees be denied.

19  　　　　　　　　　　　**iv) Costs**

20  　　　Under the Lanham Act, a plaintiff that prevails on a claim under § 1125(d) is entitled to

21  costs. 15 U.S.C. § 1117(a).  Plaintiff states that it has incurred costs in the amount of $595.00.  Jiang

22  Decl. ¶ 16. This includes $350.00 in filing fees and $245.00 for service to Defendants.  Under Civil

23  Local Rule 54-3(a), an award of costs may include the clerk's filing fee and fees for service of

24  process "to the extent reasonably required and actually incurred."  It is therefore recommended that

25  Plaintiff be awarded $595.00 in costs.

26

27

28

---

[5] Plaintiff's counsel was ordered to appear at the hearing, and his request to do so by telephone was granted on 6/11/12. After being ordered to be on call the day of the hearing, when the Court called counsel's office, it was informed that counsel had "left for the airport."  The Court's Clerk received an e-mail at 12:14 pm requesting a continuance, which was denied.

**United States District Court**
For the Northern District of California

## IV.   CONCLUSION

It is recommended that the Court GRANT the Motion in part and DENY the motion in part. Default judgment should be entered in favor of Plaintiff against Defendant Lewis Liu for the following claims two claims: (1) false designation of origin under the Lanham Act § 43(a), 15 U.S.C. § 1125(a) and (2) cyberpiracy, in violation of the Anticybersquatting Consumer Protection Act, under 15 U.S.C. § 1125(d).  Plaintiff's request for lost profits should be denied, but the Court should award $100,000 in statutory damages on the basis of Defendants' cyberpiracy.  It is further recommended that Plaintiff's request for costs totaling $595 be granted.  However, given Plaintiff's counsel's failure to appear, and the insufficiency of evidence regarding the reasonableness of the attorneys' fees, Plaintiff's request for attorneys' fees should be denied.  In addition, the Court recommends that the domain name eadgear.ca be transferred to the Plaintiff. Finally, a permanent injunction should be entered against Defendants as follows:

Defendants and their officers, directors, employees, attorneys, partners, agents, subsidiaries, successors, assigns, affiliates and any and all persons and entities under Defendants' direction or control, or in active concert or participation with any of them, are immediately and permanently enjoined and restrained throughout the world from:

A. Using any reproduction, counterfeit, copy or colorable imitation or designation confusingly similar to the eAdGear Trademark to identify any goods or the rendering of any services not authorized by Plaintiff;

B. Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiff's business reputation, or to dilute the distinctive quality of Plaintiff's name and Plaintiff's eAdGear Trademark;

C. Using a false description or representation including words or other symbols tending to falsely describe or represent Defendants' unauthorized goods or services as being those of Plaintiff or sponsored by or associated with Plaintiff and from offering such goods or services into commerce;

D. Using any simulation, reproduction, counterfeit, copy, colorable imitation or confusingly similar or substantially similar designation of the eAdGear Trademarks in connection with the rental, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiff, or to any goods or services sold, manufactured, sponsored or approved by, or connected with Plaintiff;

E. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public; or individual members thereof,

to believe that any products manufactured, distributed, sold or rented by Defendants is in any manner associated or connected with Plaintiff, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff;

F. Dealing in services that constitute infringements of any of the eAdGear Trademarks or that infringe or impair Plaintiff's rights in, or to use or to exploit, said eAdGear Trademarks, or constituting any dilution of Plaintiff's name, reputation or goodwill;

G. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in paragraphs "A" through "G", above, including without limitation assisting, aiding or abetting any other person or business entity to engage in or perform any of the above described acts.

The Clerk is directed to reassign this case to a District Judge for action on this Report and Recommendation.


IT IS SO ORDERED.


Dated: June 21, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge

29